IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LORA MCKINNEY, | ) | 8:10CV135 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT P. HOUSTON, Director, | ) | |
| Nebraska Department of Correctional | ) | |
| Services, and JOHN J. DAHM, | ) | |
| Warden, Nebraska Correctional | ) | |
| Center for Women, | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the court on Petitioner Lora McKinney's ("McKinney") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondents filed an Answer (filing no. 12), Brief in support of their Answer (filing no. 13), and State Court Records (filing no. 11). McKinney filed a Response. (Filing No. 14.) This matter is therefore deemed fully submitted.

Liberally construing the allegations of the Petition, McKinney states that she is entitled to a writ of habeas corpus because:

Claim One: The Nebraska Supreme Court's "harmless error" analysis violated Petitioner's Fourth and Fourteenth Amendment rights *because* it (1) ignored the fact that the state had waived any harmless error claims, (2) used a lesser state standard as opposed to the constitutional standard required by the United States Constitution, and (3) misinterpreted and misconstrued evidence and ignored the importance placed on the unconstitutionally obtained DNA evidence by the prosecutors during their arguments to the jury.

> Claim Two: Petitioner was denied the right to counsel in violation of the Sixth and Fourteenth Amendments *because* Petitioner did not receive notice that "harmless error" was an issue that could be addressed in a reply brief to the Nebraska Supreme Court.
>
> Claim Three: The Nebraska courts' refusal to allow Petitioner to obtain known DNA samples from other potential suspects violated her Sixth and Fourteenth Amendment rights.

(Filing No. 10 at CM/ECF pp. 2-3.)

## BACKGROUND

### I. McKinney's Conviction, Direct Appeal and Motion for Rehearing

On March 29, 2005, a jury found McKinney guilty of first degree murder. (Filing No. 11-6, Attach. 6 at CM/ECF p. 255.) Thereafter, the Seward County, Nebraska, District Court ("Nebraska District Court") sentenced McKinney to life imprisonment. (*Id*. at CM/ECF p. 258.) McKinney appealed. (*Id*. at CM/ECF p. 1.)

On direct appeal, McKinney argued, among other things, that the Nebraska District Court erred when it failed to suppress DNA evidence that was obtained pursuant to Nebraska's identifying physical characteristics statutes.[1] (Filing No. 11-2, Attach. 2 at CM/ECF p. 13.) The Nebraska Supreme Court addressed this argument and concluded that Nebraska District Court erred in admitting McKinney's DNA. *State v. McKinney*, 730 N.W.2d 74, 82-87 (Neb. 2007) ("*McKinney I*"). However, the Court also concluded that "the jury's verdict was surely unattributable to the erroneous admission of McKinney's DNA, and that error was therefore harmless." *Id*. at 88. Consequently, the Nebraska Supreme Court affirmed McKinney's

---

[1]*See* Neb. Rev. Stat. §§ 29-3301 to 29-3307.

conviction and sentence. *Id*. at 95. Where necessary, further details of the Nebraska Supreme Court's opinion on direct appeal are set forth below.

After the Nebraska Supreme Court issued its opinion, McKinney filed a Motion for Rehearing. (Filing No. 11-5, Attach. 5 at CM/ECF p. 3.) In her Rehearing Brief, McKinney asserted that the Nebraska Supreme Court violated her Sixth Amendment right to counsel by conducting a sua sponte harmless error analysis on the Fourth Amendment issue. (Filing No. 11-4, Attach. 4. at CM/ECF p. 6.) On June 27, 2007, the Nebraska Supreme Court denied McKinney's Motion for rehearing. (Filing No. 11-5, Attach. 5 at CM/ECF p. 4.)

## II. McKinney's Post-Conviction Motion and Appeal

On May 8, 2008, McKinney filed a Verified Motion for Postconviction Relief ("Post-Conviction Motion"). (Filing No. 11-12, Attach. 12, at CM/ECF pp. 18-44.) The Nebraska District Court denied McKinney's Post-Conviction Motion on February 25, 2009, and McKinney filed a timely appeal. (*Id*. at CM/ECF pp. 1, 103-06.) Liberally construed, McKinney raised Claims One, Two and Three in her Post-Conviction Motion and appeal. (*Id*. at CM/ECF pp. 1, 28-42; Filing No. 11-9, Attach. 9, at CM/ECF pp. 12, 30-51.) On January 22, 2010, the Nebraska Supreme Court affirmed the Nebraska District Court's decision to deny McKinney's Post-Conviction Motion. *State v. McKinney*, 777 N.W.2d 555 (Neb. 2010) ("*McKinney II*"). Where necessary, further details of the Nebraska Supreme Court's opinion denying post-conviction relief are set forth below.

McKinney filed her Petition for Writ of Habeas Corpus ("Petition") in this court on April 13, 2010. (Filing No. 1.) Thereafter, Respondents filed their Answer (filing no. 12) and Brief in Support (filing no.13). In their Brief, Respondents argue that McKinney's claims are either barred by *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), or that the state court reasonably applied federal law and therefore no federal

habeas corpus relief is available. (Filing No. 13 at CM/ECF pp. 5-15.) McKinney filed a Response arguing that her Sixth Amendment claim is not controlled by *Stone*. (Filing No. 14-1, Attach. 1.)

### *ANALYSIS*

**I.     Claim One**

In Claim One, McKinney alleges that the Nebraska Supreme Court's "harmless error" analysis violated her Fourth and Fourteenth Amendment rights because it (1) ignored the fact that the state had waived any harmless error claims, (2) used a lesser state standard as opposed to the constitutional standard required by the United States Constitution, and (3) misinterpreted and misconstrued evidence and ignored the importance placed on the unconstitutionally obtained DNA evidence by the prosecutors during their arguments to the jury. (Filing No. 10 at CM/ECF pp. 2-3.) "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Stone*, 428 U.S. at 494. In practice, this means that "Fourth Amendment claims asserted by state prisoners in federal habeas petitions are to be treated differently from other constitutional claims . . . ." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994).

In *Willett*, the Eighth Circuit set forth a two-part test for Fourth Amendment habeas claims:

> [A] Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.

*Id.* Part one of the *Willett* test is "simple enough–either the state has a system available for raising Fourth Amendment claims or it does not." *Id.* at 1272. Further, because the *Stone* opinion was "intended to short-circuit the district court's review of the record," part two of the test "does not require a probing review of the state court record." *Id.* at 1271-72. A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process" under *Willett*. *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007).

In applying the *Willett* two-part test to McKinney's Claim One, there is no question that Nebraska provided a system by which McKinney could raise her Fourth Amendment claims. This system allowed McKinney to raise her Fourth Amendment claims in a pre-trial motion to suppress and to challenge the Nebraska District Court's denial of that motion on direct appeal. (Filing No. 11-6, Attach. 6 at CM/ECF pp. 1, 110-13.) As discussed above, the Nebraska Supreme Court addressed McKinney's Fourth Amendment claim on direct appeal and concluded that the Nebraska District Court erred in admitting McKinney's DNA at trial. *McKinney I*, 730 N.W.2d at 82-87. However, the Court also concluded that "the jury's verdict was surely unattributable to the erroneous admission of McKinney's DNA, and that error was therefore harmless." *Id*. at 88.

McKinney does not claim that there was an "unconscionable breakdown" in Nebraska's process or that she was prevented from raising her Fourth Amendment claim. Instead, McKinney argues that the Nebraska Supreme Court's harmless error analysis was improper. (Filing No. 14.) However, *Stone* prevents this court from reviewing the Nebraska Supreme Court's harmless error analysis. *See, e.g., Gilmore v. Marks*, 799 F.2d 51, 55 (3d Cir. 1986) (concluding that "for purposes of the *Stone v. Powell* rule, a habeas petitioner's claim that a state appellate court improperly found a Fourth Amendment violation to be harmless . . . may not be raised in a habeas

5

petition in federal court."). In light of this, Claim One is dismissed.

## II.   Remaining Claims

### A.   Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Importantly, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir.

6

2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

  B. *The* Strickland *Standard*

  In addition to the general standard of review set forth above, a claim of ineffective assistance of counsel is reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

  The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

*Knowles,* 129 S. Ct. at 1420.

C.  State Court Findings Claim Two

In Claim Two, McKinney asserts that she was denied the right to counsel in violation of the Sixth and Fourteenth Amendments because she did not receive notice that "harmless error" was an issue that could be addressed in a reply brief to the Nebraska Supreme Court. (Filing No. 10 at CM/ECF pp. 2-3.) The Nebraska Supreme Court addressed the merits of this claim and rejected it. *McKinney II*, 777 N.W.2d at 561-62, 564. In doing so, the Nebraska Supreme Court stated that:

> McKinney complains that her constitutional rights were violated because, according to her, she was not notified that harmless error was at issue. This, according to McKinney, denied her rights to counsel and due process of law. But McKinney could and did argue that the error was not harmless in her motion for rehearing. And whether an assigned error was prejudicial, requiring reversal, is at issue in every appeal.
>
> . . .
>
> McKinney also suggests, in passing, that she was denied effective assistance of counsel because her counsel on direct appeal did not argue that the erroneous admission of her DNA was not harmless. But McKinney was not prejudiced by the omission, because, as noted above, those arguments were presented in her motion for rehearing. And it is certainly not clear, given our review of the record in *McKinney I*, what her appellate counsel could have argued that would have affected our decision.
>
> In short, we find no error in the district court's conclusion that McKinney was not prejudiced by the instances of ineffective assistance of counsel that she alleged.

*Id*. (citations omitted). Indeed, McKinney had the assistance of counsel when she filed her brief on rehearing, which presented the substance of Claim Three to the Nebraska Supreme Court. (Filing No. 11-4, Attach. 4.)

9

D.     *State Court Findings Claim Three*

In Claim Three, McKinney argues that the Nebraska courts' refusal to allow her to obtain known DNA samples from other potential suspects violated her Sixth and Fourteenth Amendment rights. (Filing No. 10 at CM/ECF pp. 2-3.) The Nebraska Supreme Court addressed the merits of this claim on direct appeal and rejected it. *McKinney I*, 730 N.W.2d at 89-90. In doing so, the Nebraska Supreme Court stated that:

> McKinney asserts that "[a] criminal defendant has a Sixth and Fourteenth Amendment right to prepare and present a defense using the subpoena power where there is a plausible showing of materiality and relevance." McKinney relies upon the Compulsory Process Clause of the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." In support of this argument, McKinney directs this court to *In re Jansen*, where the court held that under the Massachusetts equivalent of a subpoena duces tecum, a third party could be compelled to produce a DNA sample upon the proper showing by a defendant. The court concluded that the Massachusetts Constitution, which provides a criminal defendant the right "'to produce all proofs . . . that may be favorable to him,'" provides authority for such a request. In doing so, the court dismissed claims that obtaining the third party's DNA violated the third party's Fourth Amendment rights. We, however, find *In re Jansen* of limited applicability because the court relied on a right under the Massachusetts Constitution which is much broader than any rights provided under the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution.
>
> More instructive is *Bartlett v. Hamwi*. In *Bartlett*, the defendant sought discovery of hair samples from a witness for the prosecution. Though noting that prior case law indicated that there may be some instances when such discovery was permissible, the court held that it was not

10

> presented with such an instance.
>
> . . .
>
> As in *Bartlett*, Nebraska has no rule or statute authorizing the discovery sought by McKinney. Furthermore, we would have to balance the constitutional rights of those third parties from whom McKinney seeks to compel DNA samples. Those rights must be balanced against any rights McKinney might have in putting forth her defense. We conclude . . . that "[t]he circumstances presented here do not constitute a 'rare instance' where justice may require an invasion of a witness' privacy rights or an invasion of [a third party's] Fourth Amendment rights." We conclude that the district court did not err in denying McKinney's motion to obtain DNA samples from certain witnesses.

*Id*. (citations omitted).

    E.    *Deference*

Respondents argue that the foregoing findings of fact and conclusions of law relating to McKinney's Claim Two and Claim Three are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by state courts. (Filing No. 13 at CM/ECF pp. 13, 14-15.) Indeed, as set forth above, this court must grant substantial deference to Nebraska state court decisions. The court has carefully reviewed the record in this matter and finds that the Nebraska Supreme Court's decision to deny McKinney's Claim Two and Claim Three was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, McKinney has not submitted any evidence, let alone clear and convincing evidence, that the Nebraska Supreme Court was incorrect in any of its factual or legal determinations. 28 U.S.C. § 2254(e)(1). In short, the grant of a writ of habeas corpus with regard to Claim One or Claim Two is not warranted here because the Nebraska state courts reasonably applied *Strickland* and other Supreme Court holdings in

reaching their decision.  In light of these findings, McKinney's Petition is dismissed in its entirety.

IT IS THEREFORE ORDERED that:

1. McKinney's Petition for Writ of Habeas Corpus (filing no. 1) is denied in all respects and this action is dismissed with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 2nd day of September, 2010.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.